**ALUMINUM CO. OF AMERICA v. NATIONAL LABOR RELATIONS BOARD.**

**No. 9129.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 28, 1946.

Allison E. Stuart, Michael T. Ricks, Roger D. Branigan, all of Lafayette, Ind., (Stuart, Devol, Branigin, Ball & Ricks, and George T. Schilling, all of Lafayette, Ind., of counsel), for petitioner.

Gerald P. Van Arkel, Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Fannie M. Boyls, Atty., Morris P. Glushien, Associate Gen. Counsel, and Ida Klaus and Robert E. Mullin, Attys., all of National Labor Relations Board, all of Washington, D. C., for respondent.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Petitioner, Aluminum Company of America (hereinafter referred to as petitioner or company) brings a petition to review and set aside an order of the National Labor Relations Board, while the Board in a cross-petition prays for enforcement of its order. The Board found that the company had engaged in unfair labor practices in violation of section 8(1) and (3) and section 2(6) and (7) of the National Labor Relations Act. 29 U.S.C.A. § 158 (1, 3) and § 152 (6, 7). The order directs that the company cease and desist from discouraging membership in the United Steelworkers of America affiliated with the Congress of Industrial Organizations, or

encouraging membership in Aluminum Workers Union affiliated with the American Federation of Labor, or any other labor organization of its employees by discharging or refusing to reinstate any of its employees; to cease and desist from engaging in any like conduct interfering with the rights of its employees as guaranteed by Section 7 of the Act, 29 U.S.C.A. § 157. It was further ordered that employee Warren Wilson be reinstated with back pay.

The questions for our consideration are whether the Board's order is supported by substantial evidence and whether the Board's order is valid.

Petitioner, a Pennsylvania corporation, is a manufacturer of aluminum products. The plant involved in this proceeding is located in Lafayette, Indiana. For several years prior to 1943, the A.F.L. and the C.I.O. engaged in considerable rivalry to organize the approximately four thousand employees working at the Lafayette plant. After two indecisive elections aue to the comparable strength of the contesting unions, the A.F.L. won a run-off election and in May, 1943, was certified by the Board as the exclusive bargaining representative of petitioner's employees. July 20, 1943, the A.F.L. and petitioner entered into a written collective bargaining agreement which contained a maintenance-of-membership clause. February 11, 1944, the parties entered into a further agreement which was entitled "Addendum to Agreement." [1]

In March, 1945, after the company had discontinued bargaining conferences for a new contract with the A.F.L. due to renewed organizational activity by the C.I.O., another election was held to determine which union was entitled to the status of exclusive bargaining representative for petitioner's employees, and the A.F.L. won. After proper certification, the A.F.L. and petitioner entered into a contract for the

period from May 29, 1945, to August 1, 1946, and "thereafter until modified, after at least thirty days' notice."

The unfair labor practices which the Board found to exist center about the discharge of Warren Wilson. Wilson entered the employ of the petitioner in May, 1941. He joined the A.F.L. in May, 1943, and remained a member of the union until he was expelled March 21, 1945. Shortly after Wilson's expulsion, the union made a written demand on petitioner for Wilson's discharge pursuant to the maintenance-of-membership provision of the contract of July 20, 1943. Then followed a struggle as the union sought to effect the ouster of Wilson by the company and Wilson vainly tried to prevent the union's efforts. In January, 1945, Wilson had signed a card indicating his intention to join the C.I.O. and thereafter he propagandized fellow-employees to emulate his example. After being tried by the A.F.L. in absentia of charges of disloyalty, Wilson was expelled from the organization. ·In a second trial his expulsion was upheld despite offers on Wilson's part of back dues proffered in an attempt to resign from the A.F.L. The attempts by Wilson to resign from the union which were blocked by the A.F.L. were predicated upon the union's issuance, during the battle with the C.I.O. for exclusive employee representation, of circulars entitled "Membership Withdrawal Privilege" in which employees belonging to the union were invited, in the period from March 24 to March 31, 1945, to resign if they desired without prejudice.

The company, faced with the A.F.L.'s demand which was backed by the threat of a strike on the one hand and Wilson's protest that he had been unfairly treated on the other hand, submitted the matter to an arbitrator selected by the War Labor Board. The arbitrator found that Wilson had been lawfully expelled from the A.F.L

---

[1] "This instrument shall be entitled an 'Addendum to Agreement' and shall be considered to be, and is, a part of the agreement entered into on July 20, 1943, between the Aluminum Company of America, Lafayette, Indiana and Federal Labor Union No. 23120, of the American Federation of Labor.

"It is agreed between the Aluminum Company of America, Lafayette, Indiana and Federal Union No. 23120 of the American Federation of Labor that all working conditions contained in the agreement entered into July 20, 1943 is and shall remain in full force and effect until March 24, 1945."

and recommended that he be discharged. Accordingly he was discharged on April 5, 1945.

 Concededly, the findings of the Board are binding on this court and cannot be disputed if they are supported by substantial evidence. National Labor Relations Board v. Nevada Consolidated Copper, 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305, and cases cited. Questions of law are the only ones which may be reviewed by the judiciary. National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 597, 61 S.Ct. 358, 85 L.Ed. 368. With the scope of our review perceptibly narrowed, we turn first to the problem of whether the Board passed upon any questions of law.

Petitioner argues that the question of whether a valid contract was in existence between petitioner and the A.F.L. at the time of Wilson's discharge is a question of law, and that the Board erred when it decided that the contract between petitioner and the A.F.L. expired on March 24, 1945.

The Board, however, contends that the issue involves a finding of fact, the determination of which is within its sole province. National Labor Relations Board v. Electric Vacuum Cleaner Co., 315 U.S. 685, 696, 62 S.Ct. 846, 852, 86 L.Ed. 1120, is cited as being in support of its position. In this case the Supreme Court held that the Board's finding that the adoption by respondent and a union of a closed-shop agreement, even though invalid, vitiated an earlier oral agreement and was an inference drawn by the Board which it "is entitled to make when supported by material evidence." This finding "was an inference drawn by the Board from the circumstances surrounding the adoption of the * * * arrangement." The problem in the instant case does not center about the drawing of inferences from surrounding circumstances, but instead it requires an interpretation of the language of the addendum itself as to whether its terms extended the contract between the parties beyond the date of the employee's discharge.

It is true the Board does rely upon surrounding circumstances, such as the petitioner negotiating with the A.F.L. for a new contract and publication of notices by the union to the employees that the contract would expire March 24, 1945, the date the Board concluded it did expire, which it properly may consider to be more determinative inferences than other facts pointing to an opposite conclusion.

 It is an elementary rule not requiring citation of authorities that the construction and meaning of a written contract is a question of law; hence if there are no disputed facts regarding the effect of extension of the original contract between petitioner and the A.F.L., the question of whether the addendum extended that contract beyond March 24 is one of law to be determined from an examination of the language of the instruments themselves.

 The addendum provided that "This instrument * * * shall be considered to be, and is, a part of the agreement entered into on July 20, 1943, * * * [and] is and shall remain in full force and effect until March 24, 1945." Considered by itself and in view of the surrounding circumstances relied on by the Board, the language of the addendum terminated the contract on March 24, 1945, but the addendum was not to be considered by itself. It was "to be, and is, a part of the agreement entered into on July 20, 1943." It was an addition to the prior contract. By its unambiguous terms it was to be read into the 1943 contract. The period of the 1943 agreement was contained in section 20 and provided:

"This Agreement shall be in effect for the period ending March 24, 1944 and thereafter until modified, after at least thirty-days notice."

A mere extension of the termination dates, which is all the language of the addendum proposed to do when interjected into the original contract, would hardly nullify the automatic renewal clause of the contract. There is no doubt that from the language of the instruments themselves the agreement was not terminated March 24, 1945.

 Holding as we do that the contract was not terminated March 24, we believe that it was in effect at the time of Wilson's discharge, because though the contracting

parties were negotiating for a new agreement, neither of them had taken steps to disavow the existing contract as provided by its terms. It represented a contract between petitioner and the union which had been duly certified by the Board as the exclusive bargaining representative for petitioner's employees. The contract contained the standard War Labor Board maintenance-of-membership clause and there is no charge that, if the contract was in effect, the maintenance-of-membership clause was invalid. The proviso to § 8 (3) of the Act[2] is applicable in view of the valid maintenance-of-membership clause in the contract. Wilson's discharge was demanded by the union in accordance with its terms and the act was carried out for the same reason. The cases cited by the Board, National Labor Relations Board v. Electric Vacuum Cleaner Co., supra; Wallace Corp. v. National Labor Relations Board, 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216; National Labor Relations Board v. Link-Belt Co., supra, admittedly are inapplicable if the discharge is pursuant to an existent closed-shop agreement untainted by any unfair labor practice.

In its decision the Board did not pass upon the question, as the Trial Examiner did, of whether if the contract were still in effect at the time of Wilson's discharge, the closed-shop agreement would not have been sufficient grounds to bring petitioner within the terms of § 8(3). The Board, however, in its brief contends that assuming existence of the contract at the time of Wilson's discharge, it could not have constituted a valid defense as the employees had not been informed by the contracting parties that they still considered the contract to be in effect after March 24, 1945. We believe this argument to be answered in earlier portions of the opinion. The contract did not terminate March 24, and the parties continued to be bound by its terms. Moreover, a discharge pursuant to a valid maintenance-of-membership contract is not an unfair labor practice but is condoned by § 8(3) of the Act itself. M & M Wood Working Co. v. National Labor Relations Board, 9 Cir., 101 F.2d 938; National Labor Relations Board v. Clinton Woolen Manufacturing Co., 6 Cir., 141 F.2d 753.

It is apropos at this point to note that the Board's order appears to be founded upon a misinterpretation of the Act and thereby fails to effectuate its policies. Among other things the Act was designed to strengthen the unions in their dealings with the employers. The closed-shop proviso is an example. But while the Act protects individual union members from discriminatory discharge it strains the imagination to see where in the Act Congress has intended that discharges made pursuant to a valid union security contract should in themselves constitute an unfair labor practice. It would appear that the effect of this order is that the Board is seeking to protect a recalcitrant member from his union's discipline. The Supreme Court, we believe, anticipated this situation in Virginia Electric & Power Co. v. National Labor Relations Board, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568, when it said: "It [Board's judgment] should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act."

The order is set aside and enforcement denied.

---

[2] "That nothing in sections 151–166 of this title or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in sections 151–166 of this title as an unfair labor practice) to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective bargaining unit covered by such agreement when made."