In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 24-1348

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION
FUND and CHARLES A. WHOBREY,

*Plaintiffs-Appellees,*

*v.*

UNIVAR SOLUTIONS USA INC.,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 22-cv-6464 — **Robert W. Gettleman**, *Judge.*

---

ARGUED NOVEMBER 15, 2024 — DECIDED JULY 31, 2025

---

Before EASTERBROOK, ROVNER, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* This case presents a narrow question: whether an employer gave clear notice of its desire to terminate a collective bargaining agreement. Univar Solutions USA Inc. agreed that for the duration of a collective bargaining agreement, it would make pension contributions on behalf of union members to a multiemployer pension fund. The agreement contained a so-called evergreen clause that

extended it a year at a time until either party provided notice of a desire to cancel or terminate the agreement. The parties extended the agreement once by contract. Before the new expiration date, Univar sent a notice proposing the modification or termination of the agreement. It then entered a successor agreement that allowed it to withdraw from the Fund and cease contributing. The Fund sued, and the district court found Univar's notice too ambiguous to terminate the agreement. We disagree and reverse.

I

Central States, Southeast and Southwest Areas Pension Fund (the Fund) is an employee benefit plan and trust governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. Participating employers contribute to the Fund on behalf of their employees. These contributions are subject to collective bargaining agreements (CBAs) between the employers and local unions affiliated with the International Brotherhood of Teamsters. One employer, Univar Solutions USA Inc. (Univar), entered into a CBA with Teamsters Local Union No. 283 (the Union) in 2016. According to the terms of the 2016 CBA, Univar was required to contribute a certain amount to the Fund for each covered employee.

This case hinges on two provisions of the 2016 CBA concerning its termination and revision. Section 1 (the Evergreen Clause) is followed immediately by Section 2 (the Modifications Clause):

> Section 1. This Agreement shall be in full force and effect from April 1, 2016 to and including March 28, 2020, and shall continue in full force

and effect from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the day of expiration.

Section 2. It is further provided that where no such cancellation or termination notice is served and the parties desire to continue said Agreement but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a notice, at least sixty (60) days prior to March 29, 2020 or April 1 of any subsequent contract year advising that such party desires to continue this Agreement but also desires to revise or change the terms of such Agreement.

By participating in the Fund, Univar was also bound by a trust agreement that constrained its ability to limit contributions provided in a CBA. By its terms, Univar could not eliminate or reduce its contributions through a subsequent agreement while the 2016 CBA remained in effect, including through an extension agreement or by operation of the Evergreen Clause.

When the March 28, 2020, expiration date was approaching, Univar and the Union extended the 2016 CBA by contract (the 2020 Extension). This extension outlined several modifications and provided:

[T]he Parties have agreed to extend the [2016 CBA] until March 28, 2021 with the following modifications…. This extension Agreement will

immediately be made a part of, and attached to,
the [2016 CBA].

Come January 2021, the Union notified Univar in writing
that it "desire[d] to continue its existing Agreement, but also
desire[d] to negotiate changes or revisions in such Agree-
ment." On January 27, Univar sent a letter in response (the
January 2021 Letter) acknowledging this request and counter-
ing:

> The term of [the 2016 CBA] and its one- (1) year
> extension expires on March 28, 2021. Pursuant
> to 29 U.S.C. § 158(d), please consider this writ-
> ten notice that [Univar] proposes the modifica-
> tion or termination of the [2016 CBA] and re-
> quests to meet and confer with the Union for the
> purpose of negotiating a successor Agreement
> during March 2021.

Univar and the Union agreed to several temporary exten-
sions of the 2016 CBA during negotiations, eventually execut-
ing a successor CBA in effect from March 29, 2021, through
March 28, 2025 (the Successor CBA). According to the Succes-
sor CBA, "[e]ffective July 3, 2021 [Univar] will withdraw from
and cease making contributions to the [Fund]." Consistent
with these terms, Univar stopped contributing to the Fund af-
ter July 3, 2021.

Internal emails suggest that the Fund knew in February
2021 that Univar intended to end its participation later that
year. The Fund received a copy of the Successor CBA in June
2021, and a written confirmation that Univar had finalized
withdrawal in November. In July 2022, over a year after

contributions ended, the Fund complained to Univar for the first time about its non-payment of contributions.

The Fund sued Univar to recover unpaid contributions from July 3, 2021, through March 28, 2022, under ERISA, 29 U.S.C. §§ 1132 & 1145. Upon cross motions for summary judgment, the district court ruled in favor of the Fund. It reasoned that the 2020 Extension did not prevent the 2016 CBA from automatically renewing under the Evergreen Clause. It further found the January 2021 Letter insufficient to terminate the agreement because it did not unequivocally convey Univar's desire to do so. As a result, the court concluded that the 2016 CBA was still in full force and effect through March 28, 2022, such that Univar could not have eliminated its contribution requirements through the Successor Agreement after July 3, 2021. Accordingly, the court denied Univar's motion for summary judgment and granted the Fund's. It then entered final judgment for the Fund and ordered Univar to pay the requested contributions plus the Fund's legal fees. This appeal followed.

II

We review decisions on cross motions for summary judgment de novo. *Line Const. Ben. Fund v. Allied Elec. Contractors, Inc.*, 591 F.3d 576, 580 (7th Cir. 2010). The parties do not dispute any of the relevant facts. Rather, our task is a purely legal one: interpret and apply the governing agreements to decide whether the 2016 CBA remained in effect through March 28, 2022. We apply federal common law to interpret CBAs establishing ERISA plans, drawing on general principles of contract law to the extent those principles are consistent with ERISA. *Cent. States, Se. & Sw. Areas Pension Fund v. Transervice Logistics, Inc.*, 56 F.4th 516, 524 (7th Cir. 2022).

ERISA was enacted to protect "employee benefit funds against uncertainty and employees against loss of benefits" and established enforcement mechanisms to facilitate these goals. *Id.* Section 502, 29 U.S.C. § 1132, authorizes funds to sue "to enforce a contractual obligation to contribute to a multiemployer plan." *Transervice Logistics*, 56 F.4th at 524. This power is buttressed by § 515, 29 U.S.C. § 1145, which requires employers to contribute to funds according to the terms and conditions of the CBA that generated the obligation. *Transervice Logistics*, 56 F.4th at 524. If an employer fails to contribute as required by a CBA, funds can sue for statutory and contractual violations using these provisions, as the Fund did here.

Applying these provisions to actions to recoup contributions, we strictly enforce the terms of CBAs without considering the "understandings or defenses applicable to the original parties" so that plans can enforce them as written to the maximum extent permitted by law. *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1149, 1154 (7th Cir. 1989). This extends to the termination requirements of evergreen clauses, because they are designed to "promote stability" and ensure CBAs remain in effect through automatic renewal "unless and until" one party terminates the agreement. *Transervice Logistics*, 56 F.4th at 522, 525.

We must, then, strictly interpret the 2016 CBA and its Evergreen Clause to evaluate whether it had been validly terminated—and with it, Univar's contribution obligations—before the parties entered the Successor Agreement. Univar argues that its termination was valid for two reasons. First, it says that the 2020 Extension displaced the Evergreen Clause, such that the 2016 CBA terminated by its natural expiration in

March 2021. We disagree. Second, Univar contends that the January 2021 Letter on its own sufficiently noticed its desire to terminate the 2016 CBA before it automatically renewed. We agree.

A

In the 2020 Extension, Univar and the Union mutually agreed to extend the 2016 CBA until March 28, 2021, in light of the nationwide pandemic. Univar argues that this agreement set March 28, 2021, as the certain termination date, replacing the 2016 CBA's open-ended Evergreen Clause.

Our well-settled case law allows us to easily dispense with this argument. In *Aluminum Co. of America v. NLRB*, 159 F.2d 523 (7th Cir. 1946), we held that an addendum with a date-certain expiration did not nullify the evergreen clause of the original CBA. *Id.* at 525. Crucially, the addendum provided that it "shall be considered to be, and is, a part of" the existing CBA. *Id.* This unambiguous language required us to read the addendum into the original CBA; it could not be considered by itself, let alone supersede any existing provision. *Id.* As a result, we concluded that the addendum's stated expiration was merely an extension of the previous expiration date, which "would hardly nullify the automatic renewal clause" of the original CBA. *Id.*

So too here. Viewed in isolation, one could find that the 2020 Extension supplied a new, settled termination date for the 2016 CBA. But like the addendum in *Aluminum Co.*, the extension specified that it must "immediately be made a part of, and attached to, the collective bargaining agreement which has been extended." This unambiguous language compels us to incorporate the extension into the 2016 CBA, including its

Evergreen Clause. Rather than vitiate the clause and provide a termination date, then, the 2020 Extension read together with the Evergreen Clause simply extended the CBA's expiration date to March 28, 2021. And because CBAs can expire without terminating—indeed, that is the "whole point" of the Evergreen Clause—this expiration date merely became "the first date on which the agreement *could* terminate if timely notice was given." *Transervice Logistics*, 56 F.4th at 527.

B

With the Evergreen Clause intact, the 2016 CBA would automatically renew if neither party provided timely, explicit notice of termination before the new expiration date—March 28, 2021—as set by the 2020 Extension. Univar says it provided the required termination notice with its January 2021 Letter, and we agree.

When evaluating the sufficiency of a termination notice, "[w]e look to the language of the evergreen clause establishing the method of termination and analyze whether the alleged notice complied." *Id.* at 525. "There is no universal or standard form for an evergreen clause," so we must compare Univar's notice with the specific requirements of the 2016 CBA and its Evergreen Clause. *Id.* To effectuate termination, the Evergreen Clause requires a party to provide written notice that it desires "to cancel or terminate" the agreement at least 60 days before it expires. In the January 2021 Letter, Univar proposed "the modification or termination" of the 2016 CBA and sought to open negotiations for a "successor Agreement."

The Fund argues that this notice failed to convey a clear and unmistakable intent to terminate because it also

mentioned modification. It invokes *Transervice Logistics* for support, where we held that a request "to meet" "for the purpose of negotiating a new contract" did not properly terminate a CBA. 56 F.4th at 523. Notice was insufficient in *Transervice Logistics* because the evergreen clause required a "notice of termination," and nothing in the letter "expressed any intent to terminate the existing agreements." *Id.* at 522, 526. In other words, because "a request to negotiate is not notice to terminate," the party's request to negotiate failed to put the fund on notice of termination. *Id.* at 528.

Superimposing this reasoning onto the January 2021 Letter, the Fund says Univar's request for the "modification or termination" of the 2016 CBA was too ambiguous to properly terminate. This argument might have legs if the Evergreen Clause was the only provision at issue. But right on its heels is the Modifications Clause, which explains the steps needed to initiate revisions to the agreement. If a party wants to renegotiate, rather than terminate, the agreement, the Modifications Clause instructs it to "advis[e] that such party desires to continue [the 2016 CBA] but also desires to revise or change terms or conditions."

We have encountered a similar CBA before. In *Oil, Chemical & Atomic Workers International Union v. American Maize Products Co.*, 492 F.2d 409 (7th Cir. 1974), the CBA established notice requirements for both termination and amendment requests. *Id.* at 410. To overcome the evergreen clause, a party had to provide notice "that it desire[d] to amend or terminate" the CBA. *Id.* This notice could ask to either "[t]erminate the entire Agreement" or "amend certain sections or articles of this Agreement, only." *Id.* The Union sent a letter stating its "desire to modify the [CBA]" and "meet and confer … for the

purpose of negotiating a new contract or modifications to the present Agreement." *Id.*

In light of the specific language of the CBA, this notice was sufficient for termination. *Id.* at 411. Had the Union sought revision without termination, we reasoned, the CBA "would have at the very least required a designation of the sections or articles desired to be amended." *Id.* Because it spoke only of modifying the agreement without specifying the portions to be modified, the notice "could only mean the modification of the entire agreement and hence the termination of that agreement." *Id.*; see also *Off. & Pro. Emps. Int'l Union, Local 95 v. Wood Cnty. Tel. Co.*, 408 F.3d 314, 316 (7th Cir. 2005) ("The contract in *American Maize* added that a proposal to amend *specified* terms would not produce termination; we thought it significant that the union's notice referred to all terms rather than particular sections, a step that would have kept the remainder in force."). In short, while we require "[s]trict compliance with an evergreen clause's requirements for termination," *Transervice Logistics*, 56 F.4th at 525, we must consider the provisions of the 2016 CBA as a whole to reach a "reasonable construction" of its requirements, *American Maize*, 492 F.2d at 412.

Reading the Evergreen Clause and Modifications Clause alongside each other, we find the January 2021 Letter sufficiently terminated the 2016 CBA. It proposed "the modification or termination" of the 2016 CBA "for the purpose of negotiating a successor Agreement," without taking the steps necessary to keep the 2016 CBA in force. If Univar intended to initiate negotiations rather than termination, it would have also expressed its "desire[] to continue" the 2016 CBA as required by the Modifications Clause. That the Union's initial notice mirrored this language exactly makes its absence in the

January 2021 Letter even more stark. No reasonable construction can be given to the January 2021 Letter except that it gave clear notice of Univar's desire to terminate the 2016 CBA.

Since Univar properly terminated the 2016 CBA before its expiration date, it was well within its rights to end its contributions through the Successor Agreement. Absent this contractual obligation, the Fund was not entitled to any contributions after July 3, 2021. Summary judgment should be granted in favor of Univar, rather than the Fund, and the award of attorneys' fees must be vacated.

REVERSED IN PART, VACATED IN PART, AND REMANDED